Opinion
KAY, P. J.
Statement of Facts
On January 16, 1990, San Francisco Police Officer Carlos Racinos arrested appellant for carrying a concealed weapon in a Zim’s Restaurant (hereafter Zim’s). The People charged appellant with violating Penal Code sections 12025, subdivision (b) (carrying certain firearms without license); *Supp. 17 12031, subdivision (a) (carrying loaded firearm in public place or on public street, a misdemeanor); and 538d (false personation of a peace officer). The People agreed to dismiss the Penal Code section 538d charge, and appellant stood trial for the weapons charges.
At trial Christopher Ware, a Zim’s manager, testified that appellant provided security at Zim’s in exchange for free or discounted meals. Leonard Peoples testified that he and appellant entered into an oral agreement with John Yupango, an assistant manager at Zim’s, to provide security there. Peoples also testified that Yupango authorized him and appellant to carry a gun.
The prosecution called Officer Racinos, who testified that Yupango told him that appellant did not work as a security guard at Zim’s. The prosecution also called Donald Jong, the general manager at Zim’s, who testified that Yupango believed that appellant was a police officer. Jong further testified that Yupango did not have the authority to decide who could carry a gun in the restaurant.
At the close of trial the court gave the jury the following instruction for the Penal Code section 12025 charge: “A citizen is not prohibited from owning, possessing, keeping, or carrying, either openly or concealed, anywhere within the person’s place of residence, the citizen’s place of business, or on private property owned or lawfully possessed by the citizen any pistol, revolver or other firearm capable of being upon the person, and no permit or license to carry, concealed or open, within the citizen’s place of residence, the citizen’s place of business, or on private property owned or lawfully possessed by the citizen shall be required. To be his place of business, the citizen must have a proprietary, possessory, or substantial ownership interest in the place.”
Shortly after beginning deliberations, the jury sent the court a note asking for a dictionary so they could define and discuss “possessory” and “substantial ownership.” Defense counsel stated, “I think it’s something that they can determine on their own.” The court concluded that “. . . it’s appropriate under the circumstances to give them a dictionary so they can carry out their responsibility." The court asked defense counsel if he continued to object. Defense counsel stated that he did not object. The court sent the jury Webster’s Ninth New Collegiate Dictionary.
After further deliberations the jury asked the court for a definition of “possessory interest.” The court asked both sides for guidance in defining *Supp. 18 the term and discussed a possible definition with counsel. The court gave the jury the following definition: “A ‘possessory interest’ is an interest in property. It is possession of property or the right to possess property. It is the exclusive use of property or the right to exclude use of property. And it includes the right to control of property, the right to own, lease, occupy or possess property.” Both sides objected to the court’s definition.
On April 10,1990, the jury found appellant guilty of violating Penal Code sections 12031, subdivision (a), and 12025, subdivision (b). Appellant contends that the trial court committed reversible error by giving the jury a dictionary to look up the meaning of the words “possessory” and “substantial ownership,” and by incorrectly instructing the jury on the definition of “possessory interest.”
Discussion

The Dictionary Issue-

In People v. Karis (1988) 46 Cal.3d 612, 642 [250 Cal.Rptr. 659, 758 P.2d 1189], the California Supreme Court stated that “Jurors are not allowed to obtain information from outside sources either as to factual matters or for guidance on the law.” The court noted that use of a dictionary by a jury constitutes misconduct and raises a presumption of prejudice. (Ibid.)
Respondent argues that appellant, by failing to object, waived any error resulting from the jury’s use of the dictionary. In People v. Billings (1981) 124 Cal.App.3d 422, 433 [177 Cal.Rptr. 392], the jury requested a dictionary, and the trial court gave the jury a dictionary after each side consented. The Court of Appeal held that “. . . any objection defense counsel may have had to this type of examination was waived by his consent to the use of the dictionary.” (Ibid.) In Karis the Supreme Court discussed Billings: “The Court of Appeal held that the parties’ agreement waived any error, but also concluded that the use of the dictionary was not misconduct. To the extent that this conclusion is inconsistent with that reached here, Billings is disapproved.” (People v. Karis, supra, 46 Cal.3d at p.642, fn. 22.)
The Karis court disapproved the Court of Appeal’s conclusion in People v. Billings, supra, 124 Cal.App.3d at page 433, that a jury’s use of a dictionary was not misconduct. (People v. Karis, supra, 46 Cal.3d at p.642, fn. 22.) In doing so, however, the Supreme Court did not overrule the Court of Appeal’s finding that the parties waived any error by failing to object to the jury’s use *Supp. 19 of a dictionary. (See id. at pp.642-645.) On the issue of waiver, Billings has not been disapproved. Appellant here waived any error by expressly consenting to the jury’s use of a dictionary.

The Trial Court’s Definition of “Possessory Interest”

Appellant argues that the trial court’s definition of “possessory interest” was confusing and did not apply to the facts of this case. Reversal is only appropriate, however, if the instruction was incorrect, and if it is reasonably probable that a result more favorable to appellant would have been reached in the absence of the error. (People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)
In People v. Melton (1988) 206 Cal.App.3d 580 [253 Cal.Rptr. 661], the Court of Appeal affirmed the conviction of a convenience store clerk under Penal Code section 12025. The clerk was armed with a concealed weapon while working. He argued that Penal Code section 12026 provided an exception to section 12025 that allowed him to carry a concealed weapon at his workplace. (206 Cal.App.3d at p.586.) The court disagreed and drew a distinction between “. . . carrying a concealable weapon . . . and carrying such a weapon concealed upon the person as prohibited in section 12025.” (Id. at p.594.) The court found that section 12026 did not provide any exceptions to Penal Code section 12025, but “. . . merely highlights certain circumstances where owning, possessing, keeping or carrying a concealable weapon is not prohibited under section 12025.” (206 Cal.App.3d at pp.594-595, fn. 4.)
The Legislature responded to the Melton decision (206 Cal.App.3d 580) by amending Penal Code section 12026 to provide that a person may carry a concealable weapon “either openly or concealed” in his or her place of business or residence.[1] The Legislature also enacted an accompanying statement of purpose: “The purpose of enacting this measure is to abrogate the holding in People v. Melton, 206 Cal.App.3d 580, insofar as that decision *Supp. 20 purports to require the issuance of a concealed weapons permit in order to carry a pistol, revolver, or other firearm capable of being concealed upon the person, whether openly or concealed, within the places mentioned in Section 12026 of the Penal Code, by an individual who has a proprietary, possessory, or substantial ownership interest in the place.” (Stats. 1989, ch. 958, § 2, No. 8 West’s Cal. Legis. Service, pp.2988-2989 [No. 5 Deering’s Adv. Legis. Service, p. 3340].)
The meaning of possessory interest, as used in the statement of purpose accompany Penal Code section 12026, is a matter of first impression. The jury here had to decide whether appellant had a possessory interest in Zim’s in order to determine whether appellant was carrying a weapon in his “place of business” under section 12026.
The court gave the jury a definition of possessory interest derived from the California Code of Regulations, title 18, section 21 (dealing with valuation principles in property taxation). The language referring to “exclusive use” and “right to own” goes beyond the concept of possessory interest in the context of Penal Code section 12026 and should have been deleted from the definition. Although the court’s definition contained some excessive language, we find that the definition adequately conveyed the two essential components of a possessory interest in the context of section 12026: (1) the right to exclude others from using real property, and (2) the right to control activities occurring on real property. (See, e.g., Black’s Law Diet. (5th ed. 1979) p.1049, col. 1 [defining possessory interest as the “Right to exert control over specific land to exclusion of others.”].) Since the definition of possessory interest was given in the disjunctive, we do not conclude that the inclusion of the surplusage was so confusing that to omit it would likely have changed the result. (See People v. Watson, supra, 46 Cal.2d at p.836.)
Appellant argues that the Legislature, by expressly disapproving People v. Melton, supra, 206 Cal.App.3d 580, meant to allow employees such as convenience store clerks to carry concealed weapons at work. This argument ignores the fact that not every employee’s workplace is a “place of business” within the meaning of Penal Code section 12026. The legislative statement of purpose makes clear that an employee must have a possessory interest in his or her workplace in order for that workplace to be considered the employee’s “place of business” under section 12026. Only those employees who have the right to exclude others from their workplace, and the right to control activities there, may carry concealed weapons at work without a permit or license.
*Supp. 21 It is therefore ordered that the judgment in municipal court action No. 1213585 be affirmed.
Gyemant, J., and Garcia, J., concurred.

Penal Code section 12026, subdivision (a) now reads: “Notwithstanding Section 12025, any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Section 12021, shall not be prohibited from owning, possessing, keeping, or carrying, either openly or concealed, anywhere within the citizen’s or legal resident’s place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident any pistol, revolver, or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess, keep, or carry, either openly or concealed, any such firearm within the citizen’s or legal resident’s place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident, shall be required of the citizen or legal resident.”