TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-816 |
| of | : | |
| | : | February 13, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL has requested an opinion on the following question:

May the Director of Toxic Substances Control prohibit a non-peace officer employee from carrying a firearm while at work, including an employee who has a license to carry a firearm?

CONCLUSION

The Director of Toxic Substances Control may prohibit a non-peace officer employee from carrying a firearm while at work, including an employee who has a license to carry a firearm.

ANALYSIS

The Department of Toxic Substances Control ("Department") is a part of the California Environmental Protection Agency (Health & Saf., Code § 58000) **Footnote No. 1** and is under the control of the Director of Toxic Substances Control ("Director"). Section 58002 provides in part:

"The Department of Toxic Substances Control is under the control of an executive officer known as the Director of Toxic Substances Control, who shall be appointed by the Governor, subject to confirmation by the Senate, and hold office at the pleasure of the Governor."

In order to accomplish the purposes of the Department, the Director has all of the powers of a head of a department, including the power to appoint officers and employees, who unless expressly excepted are members of the state civil service. (§§ 58003, 58006, 58008.)

The inquiry presented for resolution is whether the Director may prohibit a non-peace officer employee from carrying a firearm while on duty, including an employee who has a license to carry a firearm. We conclude that he may do so.

Preliminarily, we note that an officer of the state has only such powers as have been conferred by law, expressly or by necessary implication. (75 Ops.Cal.Atty.Gen. 1, 5 (1992) [Secretary of State]; 69 Ops.Cal.Atty.Gen. 168, 183-184 (1986) [Director of Fish and Game]; 67 Ops.Cal.Atty.Gen. 325, 330 (1984) [Director of Industrial Relations]; 65 Ops.Cal.Atty.Gen. 467, 468 (1982) [Governor]; 63 Ops.Cal.Atty.Gen. 840, 841 (1980) [State Treasurer].)

As the head of the Department, the Director controls the actions of Department employees since the Department has no other means of functioning. (See, e.g., Gov. Code, §§ 19990 Director may determine those activities which, for employees under his jurisdiction, are inconsistent, incompatible or in conflict with their duties as state officers or employees], 19570, 19572, 19574 [Director may dismiss, demote, or suspend an employee for designated causes, including willful disobedience or any other failure of good behavior either during or outside of duty hours that is of such a nature that it causes discredit to the appointing authority or the person's employment].) In different contexts, the Legislature has defined the term "employee" as ". . . a public officer and any individual who performs services subject to the right of the employer to control both what shall be done and how it shall be done." (Code Civ. Proc., § 706.011, subd. (c); see 75 Ops.Cal.Atty.Gen. 149, 151 (1992).)

We entertain no doubt that the Director is fully authorized to regulate the conduct and comportment of the Department's employees. (See also Gov. Code, § 11152; *Gilmore* v. *State Personnel Board* (1958) 161 Cal.App.2d 439, 448; 39 Ops.Cal.Atty.Gen. 261, 264 (1962); 36 Ops.Cal.Atty.Gen. 43, 44 (1960).)

A.    License To Carry a Firearm

The present inquiry refers specifically to a Department employee who is licensed to carry a firearm. Do the statutes under which licenses are granted contain a limitation upon the Director's authority to prohibit his employees from carrying firearms while on duty? Penal Code section 12050 **Footnote No. 2** provides in part as follows:

"(a)(1) The sheriff of a county or the chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying is a resident of the county, may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person . . . ." **Footnote No. 3**

Having a license issued pursuant to section 12050 exempts the individual from criminal prosecution for carrying a concealed weapon or loaded firearm. (See 80 Ops.Cal.Atty.Gen. 100 (1997).) Subdivision (a) of section 12025 provides in part as follows:

"A person is guilty of carrying a concealed firearm when he or she does any of the following:

"(1) Carries concealed within any vehicle . . . any . . . firearm capable of being concealed upon the person.

"(2) Carries concealed upon his or her person any . . . firearm capable of being concealed upon the person."

Subdivision (j) of section 12027 exempts from the section 12025 prohibition any person who has a license issued pursuant to section 12050. Similarly, section 12031 states:

"(a)(1)A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) Subdivision (a) shall not apply to any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(6) The carrying of pistols, revolvers, or other firearms capable of being concealed upon the person by persons who are authorized to carry those weapons pursuant to . . . Section 12050 . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

More specifically, section 171b provides in part as follows:

"(a) Any person who brings or possesses within any state or local public building . . . any of the following is guilty of a public offense punishable by imprisonment in a county jail for not more than one year, or in the state prison:

"(1) Any firearm.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) Subdivision (a) shall not apply to, or affect, any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(3) A person holding a valid license to carry the firearm pursuant to . . . Section 12050 . . . ."

While a license exempts the holder from criminal prosecution under sections 12025, 12031, and 171b, it does not purport to exempt the holder from reasonable restrictions imposed by lawful civil authority. In 80 Ops.Cal.Atty.Gen. 191 (1997), for example, we concluded that the presiding judges of the superior court and municipal court could not prohibit the possession of firearms by deputy district attorneys going to and from their offices located in a criminal justice facility that included courtrooms, where the deputies were licensed to carry such firearms and would not be carrying the firearm on any floor of the facility containing a courtroom. In effect, we observed that while the judges could control their own courtroom floors regardless of the licenses held by the deputies (*id.*, at pp. 194-195), it would be the district attorney who would have control over the offices of the deputies, again regardless of their individual licenses to carry firearms.

Moreover, In 63 Ops.Cal.Atty.Gen. 24, 27-28 (1980), we noted in a different context:

"It is manifest that the relationship between a public employer and its employees affects the fundamental purposes and functions of the governmental body. [Citations.] It has been stated in this regard that governments perform their functions through their officers and employees elected or appointed for that purpose . . . .

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"The policy of the State of California in the matter of its employees is reflected in its constitution and in a comprehensive system of laws pertaining specifically to state employment. [Citation.] Such an integral, comprehensive regulatory scheme is, in itself, an indication that the provisions of a general statute were not intended to apply. [Citation.]"

As section 12050 makes no express reference to the carrying of firearms by public employees while on duty, and since a construction that would secure such a right would impair the state's power to regulate such conduct by its employees, the statute may not be so construed. (Cf. *Regents of the University of California* v. *Superior Court* (1976) 17 Cal.3d 533, 536; *City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 276-277; 66 Ops.Cal.Atty.Gen. 217, 218 (1983); 65 Ops.Cal.Atty.Gen. 267, 272-273 (1982).)

Nothing in the statutes governing the issuance of licenses to carry weapons precludes the Director from prohibiting his employees from carrying firearms while on duty.

B.      Constitutional Considerations

Having concluded that a Department employee may not assert a statutory right to carry a firearm while at work, we next consider whether any constitutional right may be asserted to overcome the Director's prohibition.

1.      Property Interest

In *Erdelyi* v. *O'Brien* (9th Cir. 1982) 680 F.2d 61, the court held that an individual did not have a property or liberty interest in obtaining a license to carry a concealed weapon in California. The court stated in part:

"Property interests protected by the Due Process Clause of the Fourteenth Amendment do not arise whenever a person has only 'an abstract need or desire for,' or 'unilateral expectation of,' a benefit. [Citation.] Rather, they arise from 'legitimate claim[s] of entitlement . . . defined by existing rules or understandings that stem from an independent source such as state law.' [Citations.]

"Concealed weapons are closely regulated by the State of California. *See* Dangerous Weapons Control Law, Cal. Penal Code §§ 12000-12094. Whether the statute creates a property interest in concealed weapons licenses depends 'largely upon the extent to which the statute contains mandatory language that restricts the discretion of the [issuing authority] to deny licenses to applicants who claim to meet the minimum eligibility requirements.' [Citation.] Section 12050 explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements. Where state law gives the issuing authority broad discretion to grant or deny license applications in a closely regulated field, initial applicants do not have a property right in such licenses protected by the Fourteenth Amendment. [Citation.] Erdelyi therefore did not have a property interest in a concealed weapons license." (*Id.*, at p. 63.)

In discussing the concept of liberty within the purview of the constitutional due process clause, the court noted that the concept includes the right to be free from actions that impose a stigma or other disability that would foreclose one's freedom to take advantage of employment opportunities. (*Ibid.*; see also *Soderback* v. *Siler* (9th Cir. 1979) 610 F.2d 643, 646.) Here, the prohibition against carrying a concealed firearm would not effectively preclude employment with the Department. On the contrary, employees of the Department have been and are functioning effectively without firearms in their possession. Nor would the prohibition be based upon some charge to which would be attached a stigma impairing other employment opportunities.

*O'Brien*, as noted above, involved an application for a concealed weapons license. The principle that there is no property or liberty interest in a gun license applies as well to an acquired permit. In *Gross* v. *Norton* (8th Cir. 1997) 120 F.3d 877, an assistant city attorney named Gross contended that the city deprived him of a property or liberty interest in violation of due process by adopting and enforcing a policy prohibiting city employees other than police officers from carrying dangerous weapons at work. "Because local authorities have broad statutory discretion to withhold a permit to carry a pistol in public [citation], Gross has no constitutionally protected property interest in his permit under Minnesota law." (*Id.*, at p. 878.) Similarly, here, a Department employee may not assert a constitutionally protected property interest in carrying a firearm while on duty by virtue of possessing a license.

2.      Right To Bear Arms

A constitutionally protected interest in liberty or property may also stem from a constitutional source. The Second Amendment to the Constitution of the United States provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *United States* v. *Miller* (1939) 307 U.S. 174, the United States Supreme Court sustained a conviction under the National Firearms Act for interstate transportation of a sawed-off shotgun. It was contended that the possession of the weapon was authorized by the Second Amendment. The court rejected the argument, stating:

"In the absence of any evidence tending to show that the possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense." (*Id.*, at p. 178.)

The rule resulting from *Miller* is that "absent a showing that the possession of a certain weapon has 'some reasonable relationship to the preservation or efficiency of a well-regulated militia,' the Second Amendment does not guarantee the right to possess the weapon." (*United States* v. *Hale* (8th Cir. 1992) 978 F.2d 1016, 1019; see also *Cases* v. *United States* (1st Cir. 1942) 131 F.2d 916, 922, *cert. den.* 319 U.S. 770 (1943).) Here, the possession by employees of the Department of firearms is not reasonably related to a well-regulated militia. (See *United States* v. *Hale*, *supra*, 978 F.2d at 1020.) The Second Amendment thus provides no impediment to the Director's proposed prohibition.

3.      Substantive Due Process

It is well established, as a matter of substantive due process, that no person may be denied government employment because of factors unconnected with the responsibilities of that employment. (*Pickering* v. *Board of Education* (1968) 391 U.S. 563, 572; *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 234; 77 Ops.Cal.Atty.Gen. 1, 2 (1994) [race, ethnicity, gender]; 66 Ops.Cal.Atty.Gen. 486, 487 (1983) [sexual orientation]; 66 Ops.Cal.Atty.Gen. 367, 370 (1983) [outside employment]; 64 Ops.Cal.Atty.Gen. 837, 842 (1981) [physical fitness]; 63 Ops.Cal.Atty.Gen. 583, 586 (1980) [sexual preference]; 62 Ops.Cal.Atty.Gen. 180, 181-182 (1979) [physical disability].)

The prohibition against the carrying of firearms by employees of the Department while on duty has a rational basis in the Director's legitimate interest in preserving public safety during the course of employee interaction with members of the public, as well as safety in the workplace. (See *Gross* v. *Norton*, *supra*, 120 F.3d at 879; *Love* v. *Pepersack* (4th Cir. 1995) 47 F.3d 120, 123; *Baer* v. *City of Wauwatosa* (7th Cir. 1983) 716 F.2d 1117, 1123.) Hence, no denial of substantive due process may be asserted here by a Department employee.

C.      Restrictions Upon Peace Officer Employees

Finally, we note that a contrary result would be incongruous vis-a-vis employees of the Department who are peace officers. Section 830.3 provides in pertinent part:

"The following persons are peace officers . . . for the purpose of performing their primary duty . . . . These peace officers *may carry firearms only if authorized and under those terms and conditions as specified by their employing agencies*:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(h) All investigators of . . . the Department of Toxic Substances Control . . . provided that the primary duty of these peace officers shall be the enforcement of the law relating to the duties of his or her department . . . ." (Italics added.)

Consequently, even an employee of the Department who is a peace officer may not carry a firearm while on duty unless expressly authorized by the Director. It would be irrational to suggest that a state agency has less authority over its non-peace officer employees than over its peace officer employees with respect to the carrying of firearms while on duty.

It is concluded that the Director may prohibit a non-peace officer employee from carrying a firearm while at work, including an employee who has a license to carry a firearm.

\* \* \* \* \*

**Footnote No. 1**
All section references prior to footnote 2 are to the Health and Safety Code unless otherwise expressly designated.
**Footnote No. 2**
All section references hereafter are to the Penal Code unless otherwise expressly designated.
**Footnote No. 3**
We reject the suggestion that a Department employee is exempt from the necessity of licensure by virtue of section 12026, subdivision (b), which states:

"No permit or license to . . . carry, either openly or concealed, shall be required of any citizen . . . to . . . carry, either openly or concealed, a . . . firearm capable of being concealed upon the person within the citizen's . . . place of residence, *place of business*, or on private property owned or lawfully possessed by the citizen . . . ." (Italics added.)

An employee's workplace is generally not his "place of business" within the meaning of section 12026. (*People* v. *Barela* (1991) 234 Cal.App.3d Supp. 15, 20 [only employees with a possessory interest in their workplace "who have the right to control activities there, may carry concealed weapons at work without a permit or license"].).